WAKEFIELD WATER COMPANY *vs.* NEW ENGLAND TRUST
COMPANY & another.

Suffolk.    December 4, 1899. — March 3, 1900.

Present. HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Trust Mortgage — Equity.*

A corporation, which executes a mortgage of its property in trust, securing an
issue of bonds and providing that the holders of certain debenture bonds pre-
viously issued by the corporation may exchange them for the mortgage bonds,
cannot maintain a bill in equity to prevent the trustee from making such an
exchange of bonds for a bondholder, who has deposited his debenture bonds
with the trustee and demanded mortgage bonds therefor, prior to a vote of the
corporation withdrawing from the bondholders the privilege of making such an
exchange and revoking the authority of the trustee to act.

BILL IN EQUITY, filed February 18, 1899, in the Superior
Court, to restrain the New England Trust Company from ex-
changing certain mortgage bonds for debenture bonds of the
plaintiff corporation.    The Woodstock National Bank was al-
lowed to intervene as a party defendant.

The following facts were agreed: The plaintiff, which is a
corporation engaged in the business of furnishing water to the
inhabitants of the towns of Wakefield and Stoneham, on or
about July 1, 1892, pursuant to a vote of its stockholders, exe-
cuted and delivered to the defendant trust company a third
mortgage of all its property in the sum of $800,000, payable
July 1, 1912.    The then outstanding indebtedness consisted of
a first mortgage for $200,000, dated July 2, 1883, and payable
July 1, 1903, to secure an issue of bonds for a like amount; a
second mortgage for $300,000, dated May 1, 1886, and payable
February 1, 1906, to secure an additional issue of bonds for
$100,000 and to provide for the refunding of the first mortgage
bonds; and five per cent coupon debenture bonds for $300,000,
in three issues of $100,000 each, dated March 1, 1887, Septem-
ber 1, 1889, and October 1, 1889, respectively.

The third mortgage contained, among other things, the fol-
lowing recitals and provisions:

"And whereas, in order to carry out the foregoing arrange-

ment, it has been deemed desirable that the obligations to be issued under this indenture shall be sufficient to fairly represent the present total bonded indebtedness of said Wakefield Water Company, to wit, the sum of six hundred thousand (600,000) dollars, together with the sum of two hundred thousand (200,000) dollars for the additions and extensions to the works and capacity of the company, present and future, and for payment of any indebtedness or liability of the company now or hereafter existing, in all amounting to the sum of eight hundred thousand (800,000) dollars;

"And whereas, it is a part of this arrangement that three hundred thousand (300,000) dollars of the bonds to be issued hereunder shall be issued only upon the deposit with said trust company of the said three hundred thousand (300,000) dollars of said mortgage bonds as hereinbefore set forth;

"And whereas, it is a part of the arrangement that three hundred thousand (300,000) dollars of the bonds to be issued hereunder shall be set apart for the retirement of said amount of three hundred thousand (300,000) dollars in the five (5) per cent coupon debenture bonds of said company, outstanding as aforesaid, which said bonds shall be exchangeable bond for bond, with equalization of interest, through the said New England Trust Company, the present outstanding five (5) per cent coupon debenture bonds being cancelled by said trust company as soon as received and exchanged.

"The bonds shall be certified and issued by the party of the second part as follows: (1) Three hundred thousand (300,000) dollars as the five (5) per cent coupon debenture bonds hereinbefore specified shall be presented for exchange and cancelled. (2) Two hundred thousand (200,000) dollars as the two hundred thousand (200,000) dollars first mortgage bonds of July 2, 1883, shall be successively deposited with the party of the second part. (3) One hundred thousand (100,000) dollars as the one hundred thousand (100,000) dollars five (5) per cent mortgage bonds of May 1, 1886, shall be successively deposited with the party of the second part. (4) The remainder as they shall be requested by votes of the directors of the party of the first part, stating the purposes as hereinbefore set forth, for which said bonds are required, and upon receiving a copy of said votes duly

certified the party of the second part shall be under no further or other responsibility whatever as to the issue of said bonds."

On or about July 1, 1892, the plaintiff duly executed its eight hundred coupon bonds of $1,000 each, to the amount in all at par of $800,000, payable to the New England Trust Company, or bearer, in twenty years from that day, and bearing interest at the rate of five per cent per annum, payable semi-annually, being the bonds secured by the third mortgage above mentioned.

On January 9, 1893, the plaintiff executed and delivered $800,000 of new bonds to the defendant trust company, in accordance with the terms of the third mortgage, of which six hundred were for the purpose of refunding the above described outstanding indebtedness of the plaintiff. Since the time of the delivery of the bonds to the trust company, two hundred and seventy-two of the three hundred debenture bonds have been presented to the trust company for exchange for the third mortgage bonds, and the trust company, after executing the certificate above referred to, has made such exchanges. No first mortgage bonds have been exchanged for second mortgage bonds, and no first or second mortgage bonds have been exchanged for third mortgage bonds. The trust company as trustee, and under the terms of the mortgage, now has in its possession three hundred and twenty-eight of the third mortgage bonds.

Of the eight hundred new bonds embraced in the third mortgage, six hundred were intended to replace bonds previously issued and outstanding, and two hundred to provide for the extension of the works or additional construction, and a large part of these two hundred new bonds were issued or negotiated prior to 1897, thereby largely increasing the bonded debt and interest charges of the corporation, so that the interest charges were thereafter in excess of the net income of the corporation.

The directors, in June, 1897, issued a circular to the holders of bonds not secured by the first and second mortgages, requesting them to assent to a reduction of interest on their bonds from five per cent to four per cent, and the holders of all but $15,000 of such bonds assented to such reduction. In November, 1897, the directors issued a circular to the first and second mortgage bondholders, asking them to assent to a like reduction of inter-

est on their bonds to four per cent, and informing them that thereafter only four per cent interest would be paid on such bonds as the coupons matured.

The first and second mortgage bondholders refused to accept this reduced rate, and the second mortgage bondholders thereupon procured the New England Trust Company, as mortgagee, to bring a suit against the plaintiff, praying for an injunction to restrain the payment of any interest whatever on the third mortgage bonds until full interest was first paid and provided for on the first and second bonds, and praying also for the appointment of a receiver, and the trust company obtained such an injunction on June 1, 1898, and caused the same to be served upon the plaintiff.

The Woodstock National Bank, on August 6, 1898, became, and has since been, the legal owner and holder of twenty-five of the debenture bonds of $1,000 each, dated March 1, 1887. On or about September 30, 1898, the bank delivered the bonds to the trust company for the purpose of exchanging the same for an equal number of the third mortgage bonds then and now in the hands of the trust company, and demanded such an exchange of bonds, prior to the passing of the vote hereinafter mentioned.

On or about December 27, 1898, the directors of the plaintiff corporation passed the following vote, and gave the trust company notice thereof on the same day: "Voted, In view of the changes which have occurred in the financial condition of the Wakefield Water Company, since the execution by it of its third mortgage, so called, dated July 1, 1892, that the privilege therein given to the then holders of the debenture bonds of said corporation of converting the same into bonds secured by said third mortgage be and the same hereby is withdrawn, and that no more third mortgage bonds be issued by the New England Trust Company in exchange for outstanding debenture bonds; and that the New England Trust Company, named as mortgagee in said third mortgage, be requested to cause the third mortgage bonds still remaining in its possession to be cancelled; also, voted, That any authority heretofore given by this corporation to said trust company to exchange said third mortgage bonds as aforesaid be and the same is hereby revoked."

On February 13, 1899, the trust company informed the plain-

tiff that it had been advised by counsel that it was bound in law to make the exchange of third mortgage bonds for debenture bonds as requested by the bank, and that it should make such exchange as " debenture bonds are presented," and also informed the plaintiff that it already had an application for the exchange of some $30,000 of the debenture bonds. The plaintiff thereupon notified the trust company that it would at once apply for an injunction to prevent it from carrying out its intention to make the exchange proposed, and brought this suit for that purpose.

The words following are printed on the face of all the third mortgage bonds: " This bond shall not become obligatory until it shall have been authenticated by a certificate indorsed thereon, duly executed by the New England Trust Company." No such indorsement has yet been made upon the bonds remaining in the possession of the trust company.

At the hearing a decree was entered dismissing the bill with costs; and the plaintiff appealed to this court.

*F. A. Brooks*, for the plaintiff.

*J. L. Stackpole*, for the New England Trust Company.

*W. Keyes*, for the Woodstock National Bank.

BARKER, J. 1. The question is raised by the defendants, whether if the water company had the right to annul the authority of the trust company to issue bonds under the trust of 1892 in exchange for debenture bonds, the vote of the directors of the water company was effectual as an exercise by the company of that right. Upon this point we express no opinion.

2. The vote referred to assumes that the power of the trust company to make the exchange continued up to the time of passing the vote, and that it was thereby withdrawn. But the twenty-five debenture bonds of 1887 owned by the Woodstock National Bank had been presented by the bank to the trust company for exchange in September, 1898, and before the passing of the directors' vote the bank had demanded of the trust company new bonds, the delivery of which alone was necessary to complete the exchange. By the construction which the water company has put upon the trust of 1892, the offer to holders of debenture bonds was open when the bonds of the bank were presented to the trust company for exchange, and when the new bonds were demanded. The bank having delivered up its

bonds and perfected its right to an exchange, while, upon the plaintiff's construction of the trust, the offer yet remained open, a subsequent withdrawal of the offer could not defeat the right of the bank to have the exchange completed.

Aside from the twenty-five bonds so placed with the trust company for exchange, the agreed facts show that there have been two hundred and seventy-two of the debenture bonds already exchanged. This leaves but three bonds of that kind, and it is not shown that their holders have offered them for exchange, or that they will be so offered. To inquire whether the trust company still has the power to exchange them is very much a moot question; and it is a question in which the holder of those bonds, who is not before the court, has an interest, and in which his rights cannot now be settled in this cause.

For these reasons the decree of the Superior Court is affirmed.

*So ordered.*